UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DEFENSE OF FREEDOM INSTITUTE FOR
POLICY STUDIES, INC.,

      Plaintiff,

      v.

U. S. DEPARTMENT OF EDUCATION, *et. al*.,

      Defendants.

Civil Action No. 24-0814 (JMC)

## JOINT STATUS REPORT

Pursuant to the Court's Minute Order dated December 9, 2024, the parties by and through their respective undersigned counsel, respectfully submit this Joint Status Report and have indicated each party's position as follows:

**DEFENDANTS' POSITION:**

In accordance with the Court's October 9 Minute Order, Defendants propose that the parties submit a further joint status report in 90 days, that is, on or before March 7, 2025.

### DEPARTMENT OF EDUCATION

1.    This action, filed under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, involves two FOIA requests by Plaintiff Defense of Freedom Institute for Policy Studies, Inc. ("DFI") to the U.S. Department of Education ("Education"). The first request is dated February 7, 2022, and the records requested are reflected in Exhibit A-1 to the operative Complaint. The second request is dated February 27, 2023, and the records requested are reflected in Exhibit C-1 to the Complaint. Education assigned the first request No. 22-01850-F and the second request No. 23-01128-F. Education states that the status of the two requests are as follows:

- 1 -

2. Request No.23-01128-F: As previously reported, the following four program offices were identified as the offices likely to have records responsive to this request: (1) Office of Office of the Secretary ("OS"), (2) Office of the Under Secretary ("OUS"), (3) Federal Student Aid ("FSA"), and (4) Office of the General Counsel ("OGC"). Defendant has completed its searches and responsiveness review. OS has identified approximately 33 responsive pages; FSA has identified approximately 201 responsive pages; and OGC has identified approximately 971 responsive pages. OUS completed its responsiveness review in June 2024. All records were determined to be duplicative of the records produced by the other program offices.

3. Request No.22-01850-F: As previously reported, the same four program offices were identified as the offices likely to have records responsive to DFI's second request. Education initially identified one record responsive to DFI's request based on a misreading of the request. After running a supplemental search, the Department identified 71,257 of additional responsive material. On the date of this report, undersigned counsel for Education requested Plaintiff's position on whether it would be willing to exclude copies of the Department's internal section 117 database, as doing so would reduce the universe of remaining records to 16,647. Counsel for Plaintiff represented that they would need additional time to consider the request.

4. Education has been processing the responsive records at the rate of at least 500 pages per month, with its first release made on April 30, 2024, with subsequent monthly releases made on May 31, 2024, June 28, 2024, and July 31, 2024, August 30, 2024, September 30, 2024, October 31, 2024, November 29, 2024, December 19, 2024, January 31, 2025, and February 28, 2025. Education intends to continue making subsequent productions at the same processing rate to occur on a monthly basis until the processing of both requests is complete.

## OFFICE OF MANAGEMENT AND BUDGET

5. This action also involves one FOIA request by Plaintiff DFI to the Office of Management and Budget ("OMB"). This request is dated February 7, 2022, and the records requested are reflected in Exhibit B-1 to the operative Complaint. OMB assigned this request No. 2022-177. OMB conducted an initial electronic search for records responsive to Plaintiff's request using terms which would capture all potentially responsive records containing the terms identified in the request. As previously reported, this initial search returned more than 3,000,000 potentially responsive documents. In an effort to reduce the number of documents needed to be reviewed, the parties agreed that OMB could run a new search using agreed search terms, which removed some of the terms which were determined to have returned large numbers of nonresponsive documents. This second search was completed in early April and had returned more than 78,000 documents. OMB has begun to process the potentially responsive documents at an intended rate of 300 documents per month.

6. On June 6, 2024, OMB made its first rolling production in response to Plaintiff's request, based on its processing of 265 documents. Of these documents, OMB determined that 29 documents were responsive to Plaintiff's request, released 15 documents in part, and withheld 12 documents in full. The remaining two responsive documents were copies of publicly available congressional bills, and OMB provided links to the publicly available versions. The remaining 236 documents reviewed consisted of 107 duplicate documents and 129 nonresponsive documents, which were omitted from the production.

7. On June 25, 2024, OMB made a supplement to its first rolling production, based on its processing of 35 additional potentially responsive documents. Of these documents, OMB determined that 33 documents were responsive to Plaintiff's request, and released these 33

documents in part. The remaining two documents were nonresponsive, and were omitted from the production.

8. On July 25, 2024, OMB made its second rolling production in response to Plaintiff's request, based on its processing of 300 documents. Of these documents, OMB determined that 71 documents were responsive to Plaintiff's request, released 45 documents in part, and withheld 26 documents in full. The remaining 229 documents reviewed consisted of 125 duplicate documents and 104 nonresponsive documents, which were omitted from the production.

9. On August 26, 2024, OMB made its third rolling production in response to Plaintiff's request, based on its processing of 308 documents. Of these documents, OMB determined that 84 documents were responsive to Plaintiff's request, released 49 documents in part, withheld 34 documents in full. The remaining one responsive document was a of a publicly available congressional bill, and OMB provided a link to the publicly available version. The remaining 224 documents reviewed consisted of 125 duplicate documents and 99 nonresponsive documents, which were omitted from the production.

10. On September 25, 2024, OMB made its fourth rolling production in response to Plaintiff's request, based on its processing of 300 documents. Of these documents, OMB determined that 85 documents were responsive to Plaintiff's request, released 63 documents in part, and withheld 22 documents in full. The remaining 215 documents reviewed consisted of 97 duplicate documents and 118 nonresponsive documents, which were omitted from the production.

11. On October 25, 2024, OMB made its fifth rolling production in response to Plaintiff's request, based on its processing of 300 documents. Of these documents, OMB

determined that 101 documents were responsive to Plaintiff's request, released 61 documents in part, and withheld 39 documents in full. The remaining one responsive document was of a publicly available congressional bill, and OMB provided a link to the publicly available version. The remaining 199 documents reviewed consisted of 121 duplicate documents and 78 nonresponsive documents, which were omitted from the production.

12. On November 25, 2024, OMB made its sixth rolling production in response to Plaintiff's request, based on its processing of 300 documents. Of these documents, OMB determined that 69 documents were responsive to Plaintiff's request, released 41 documents in part, and withheld 28 documents in full. The remaining 231 documents reviewed consisted of 122 duplicate documents and 199 nonresponsive documents, which were omitted from the production.

13. On December 23, 2024, OMB made its seventh rolling production in response to Plaintiff's request, based on its processing of 300 documents. Of these documents, OMB determined that 59 documents were responsive to Plaintiff's request, released 42 documents in part, and withheld 17 documents in full. The remaining 241 documents reviewed consisted of 114 duplicate documents and 127 nonresponsive documents, which were omitted from the production.

14. On January 31, 2025, OMB made its eighth and final rolling production in response to Plaintiff's request, based on its processing of 237 documents. Of these documents, OMB determined that 67 documents were responsive to Plaintiff's request, released 42 documents in part, and withheld 22 documents in full. The remaining three responsive documents were of publicly available congressional bills, and OMB provided links to the publicly available versions. The remaining 170 documents reviewed consisted of 106 duplicate documents and 64

nonresponsive documents, which were omitted from the production. With this production, OMB completed its processing of Plaintiff's request.

15. It remains Defendants' position that establishing a summary judgment briefing schedule and filing a Vaughn index are premature at this time. Additionally, Vaughn indices accompanying rolling productions, as Plaintiff proposes below, would be unduly burdensome. Consistent with the Court's December 9, 2024 Minute Order, Defendants propose that the parties submit another Joint Status Report in 90 days, that is, on or by June 13, 2025, which updates the Court on the status of this matter.

## PLAINTIFF DEFENSE OF FREEDOM INSTITUTE'S POSITION

Plaintiff proposes that the parties submit a further joint status report in 60 days, that is, on or before May 14, 2025.

16. The Department claims that it is producing records at the rate of at least 500 per month but this is not the case. In the Department's February 28, 2025 provision only 97 pages were produced. In the Department's January 31, 2025 tranche, they produced only 318 pages. In the Department's December 19, 2024 provision included a mere 60 pages. This falls far below the promised production rate.

17. It is Plaintiff's position that although Education and OMB have provided some documents pursuant to the Court's order, these documents have been heavily redacted without a valid basis. The last several tranches, particularly those from both the OMB and the Department have many multiples of pages which are fully to almost fully redacted. Other pages have large swaths of redactions. Because of the redactions, a *Vaughn* index is necessary to eliminate differences which will allow both parties to "confer and attempt to resolve their dispute." *See*

Minute Order of April 9, 2024.  Both OMB and Education have refused Plaintiff's demand for a *Vaughn* index in this case.

18. An agency which seeks to withhold records under FOIA is required to justify these actions.  *See* 5 U.S.C. § 552(a)(4)(B).  A *Vaughn* index is appropriate when an agency, like Education and the OMB, must meet their burden to show that the withholdings are appropriate and may do so "by providing a *Vaughn* index which must adequately describe each withheld document, state which exemption the agency claims for each withheld document, and explain the exemption's relevance." *Johnson v. Exec. Office for U.S. Att'ys*, 310 F.3d 771, 774 (D.C. Cir. 2002); *see also Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).  Because of the large number of redactions and withheld documents Plaintiff expects that they will have to litigate on the issue of these claimed exemptions.  Plaintiff proposes that a *Vaughn* index be produced for all documents from the Department thus far produced no later than April 14, 2025 and for every new tranche going forward.

19. OMB claims that it made its final production in late January 2025 but still continues to refuse to provide a *Vaughn* index.  DFI requests that the Court order a *Vaughn* index from OMB no later than April 14, 2025.

20. DFI does not believe that the OMB has provided all documents responsive to its requests.  OMB officials are required to document and upload all relevant messaging such as text messages and social media, on its servers. *Oglesby v. Dep't of Army*, 920 F. 2d 57, 58 (D.C. Cir. 1990) requires an agency to show it made a good faith effort using methods that are "reasonably expected to produce information" and clarifies that an "agency cannot limit its search to only one record system if there are others that are likely to turn up the information requested." *Id.* at 68.  As stated in *Shteynlyuger v. Ctrs. for Medicine & Medicaid Servs.*, 698 F.Supp.3d 82, 109

(D.D.C. 2023) "an agency may be obligated to search a particular employee's text messages in response to a FOIA request." *Id.* All that is necessary is that it must be "reasonably likely" that an official used a certain type of communication that might contain the referenced documents. *Id.* There are two criteria for whether a material is an agency record. "First, an agency must either create of obtain the requested material. . . . Second, the agency must be in control of the requested materials at the time the FOIA request is made." *Cause of Action Inst. v. N.O.A.A.*, No. 19-1927 (TSC), 2023 U.S. Dist. LEXIS 91060, at *9-10, (D. D. C., May 24, 2023). The burden falls on the OMB "to disprove, that the materials sought are not 'agency records." *Id.* at 10. The OMB routinely requires its employees to catalog and record social media, text messages, and other personal messages that its employees, including Secretaries, receive. It was doing so during the relevant time period. Therefore, the OMB should search these types of mediums for responsive records including but not limited to:

　　a.　X tweets (which was previously known as Twitter)

　　b.　Texts on both private and government issued phones

　　c.　LinkedIn Messages

　　d.　Chats from Teams Meetings

　　e.　Social Media Communications including Facebook, Instagram, and Snapchat and other Social Media platforms

　　f.　Signal Communications

　　21.　Plaintiff proposes that at this time it defer requests for limited discovery and summary judgment motions until it reviews and responds to Education's and OMB's productions and the parties have had an opportunity to meet and confer with respect to any issues Plaintiff may identify with respect to past and future productions.

22. Plaintiff proposes that the parties be ordered to file a further Joint Status Report on or before May 14, 2025 and every sixty days thereafter, until the production of documents is complete, at which point the parties will file a Joint Status Report with a proposal for further proceedings.

WHEREFORE, each party respectfully requests individually that the Court adopt their respective proposals.

Dated: March 14, 2025
Washington, DC

Respectfully submitted,

By: *Martha A. Astor*
Martha A. Astor
D.C. Bar No. 900002288
Defense of Freedom Institute
1455 Pennsylvania Avenue,
NW Washington, DC 20004
Telephone: 321-390-2707
Martha.Astor@dfipolicy.org

EDWARD R. MARTIN, JR., D.C. BAR #481866
United States Attorney

By: */s/ L'Shaunteé J. Robertson*
L'SHAUNTEE J. ROBERTSON
D.C. Bar No. 980248
Assistant United States Attorney 601
D Street, N.W.
Washington, D.C. 20530
(202) 252-1729

*Attorneys for the United States of America*

DONALD A. DAUGHERTY, JR.
D.C. Bar No. 90000663
1455 Pennsylvania Avenue,
NW Suite 400
Washington, DC 20004
414-559-6902
Don.Daugherty@dfipolicy.org

*Counsel for Plaintiffs*